Order Form (01/2005)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Judge Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 09 C 3366 | **DATE** | March 6, 2012 |
| **CASE TITLE** | Velazquez v. Office of the Illinois Secretary of State, et al. | | |

**DOCKET ENTRY TEXT:**

Defendants' motion for summary judgment on Count I is GRANTED, Plaintiff's motion for summary judgment on Count I is DENIED. Plaintiff's motion for summary judgment on Count II is GRANTED, Defendants' motion for summary judgment on Count II is DENIED.

# STATEMENT

On December 14, 2011, I entered an order denying both parties' motions for summary judgment on Count III. I also requested further briefing on whether Count I is barred by 28 U.S.C. § 1738, and whether Defendants are entitled to qualified immunity on Count II. Both sides have provided supplemental briefing and I now rule on Counts I and II.

1. Count I is barred by 28 U.S.C. § 1738

In my December 14, 2011, order I laid out in some detail the res judicata issue in this case as it relates to Plaintiff's Title VII claim. I incorporate that analysis and find that Plaintiff's Title VII claim is barred by 28 U.S.C. § 1738. Plaintiff cannot distinguish this case from *Welch v. Johnson*, 907 F.2d 714 (7th Cir. 1990). Nevertheless, Plaintiff argues it would be inequitable to preclude Count I at this stage because he "could not have meaningfully alleged racial disparity before the Merit Commission due to a lack of evidence to support such an argument." Whether or not this is true, Plaintiff certainly could have alleged racial discrimination in state court. Without a showing that he was somehow blocked from doing so, which Plaintiff does not allege, his failure to raise racial discrimination in state court precludes him from raising it in this court.

2. Defendants are not Entitled to Qualified Immunity on Count II

Neither party adequately briefed the question of qualified immunity as to Count II in their original summary judgment filings so I allowed another opportunity. Plaintiff seized the opportunity and constructed a serious argument, Defendants did not. Despite my previous rulings rejecting the argument, Defendants continue to frame the constitutional issue around the difference between suspension and administrative leave. Once more, these are internal bureaucratic distinctions that have no bearing on the constitutional issue in this case.

*See Vitek v. Jones*, 445 U.S. 480, 491 (1980) ("minimum [procedural] requirements [are] a matter of federal law, they are not diminished by the fact that the State may have specified its own procedures that it may deem adequate for determining the preconditions to adverse legal action."). The proper question for purposes of qualified immunity is whether, based on clearly established law at the time, a reasonable person in Defendants' position would have known that the process afforded to Plaintiff during the course of his suspension, termination, and post-termination hearings fell below that which he was constitutionally due. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).[1] Put differently, did Defendants have "fair warning" that the specific way in which they carried out Plaintiff's suspension and termination ran afoul of the Fourteenth Amendment? *U.S. v. Lanier*, 520 U.S. 259, 270-71 (1997). The answer to both of these questions is "yes."

(* In my December 14 order I found that Plaintiff's property deprivation lasted from November 16, 2007, the day he was put on leave without pay status, to April 30, 2008, the day he was formally terminated. That was incorrect. The deprivation lasted at least until October 6, 2008, the date he was finally given a hearing before the merit commission).

There are few constitutional rules more clearly established than the requirement of notice and a hearing "at a meaningful time and in a meaningful manner" when a deprivation of constitutionally protected property occurs. *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965). It is also clearly established that the "root requirement" of the Due Process Clause is "that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest." *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971). Thus "some kind of a hearing" must occur "prior to the discharge of an employee who has a constitutionally protected property interest in his employment." *Id.* "An important government interest, accompanied by a substantial assurance that the deprivation is not baseless or unwarranted, may in limited cases demanding prompt action justify postponing the opportunity to be heard until after the initial deprivation." *FDIC v. Mallen*, 486 U.S. 230, 240 (1988). However, in such cases a "prompt" post-deprivation hearing must be provided, meaning one that proceeds and concludes without "appreciable delay." *Barry v. Barchi*, 443 U.S. 55, 66 (1979).

*Loudermill*, 470 U.S. 532 and *Gilbert v. Homar*, 520 U.S. 924 (1997) provided more than "fair warning" to Defendants that some type of hearing was constitutionally required before Plaintiff could be terminated (though not necessarily before being suspended without pay). It cannot be gainsaid that *Loudermill* clearly establishes the right to some limited type of hearing before a public employee dismissible only for cause can be terminated. *See Gilbert*, 520 U.S. at 929. While pre-termination hearings "need not be elaborate," they "should be an initial check against mistaken decisions–essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Loudermill*, 470 U.S. at 545-46.

Defendants do not dispute that Plaintiff was entitled to some type of pre-termination hearing, but assert that they believed Plaintiff was provided all the process he was constitutionally due at the September 26, 2007 interview. This belief was objectively unreasonable for the following reasons. First, the purpose of the September 26, 2007 interview was not to test the government's evidence, but to relieve Plaintiff of duty. There was no neutral fact finder present to serve as a check against a mistaken decision. Whether or not Defendants Pippin and Nash gave Plaintiff an opportunity to tell his side of the story, Defendants Roth and Demuzio had already made the decision to place Plaintiff on administrative leave prior to the interview, and neither of them were present to hear Plaintiff's side of the story. Thus, the interview was not a "meaningful opportunity to invoke the discretion of the decisionmaker." *Id.* at 543. Second, Plaintiff had insufficient notice and no time to prepare for the meeting. Rather, he was told to come down to Springfield under false

pretenses and surprised with the evidence against him. The nature of the interview was ambiguous at best, and Plaintiff could have reasonably believed he was under arrest and should remain silent. A finding that the September 26, 2007 interview was an adequate pre-termination hearing would render the protections laid out in *Loudermill* meaningless.

Defendants also had "fair warning" that they were required to provide Plaintiff with a "prompt" post-deprivation hearing. *See Barry*, 443 U.S. at 66. Given Plaintiff's "paramount" interest in his livelihood, *id.*, no reasonable person in Defendants' position could believe that an eleven-month delay before obtaining any a hearing (let alone the added two months before a final decision was reached) satisfied this constitutional requirement, particularly in the absence of *ex parte* assurances that the deprivation was not baseless. *See Barry*, 443 U.S. at 65; *Mallen*, 486 U.S. at 241. After Plaintiff's paycheck was cut off on November 16, 2007, he was placed in a procedural black hole with no way of contesting the deprivation, and with no clock running on the Defendants to provide a prompt hearing. Defendants apparently believed they could postpone a hearing until they got around to completing the investigation, whenever that may have been. This belief was unreasonable in light of *Barry*, where the Supreme Court emphasized the need for assurances of a "prompt proceeding and prompt disposition" when pre-deprivation process is not provided. *Barry*, 443 U.S. at 66. Here, no such assurances were in place. Instead, Plaintiff was subject to Defendants' whim in terms of providing basic procedural protections, and consequently almost a year passed between the date Plaintiff's paycheck was cut off without warning (November 16, 2007) and the date he was able to contest the deprivation in any meaningful way (October 6, 2008). Defendants knew it was *more* likely than not that Plaintiff would "suffer the full penalty imposed" before having the "opportunity to put the State to its proof." *Id*. Under these circumstances, an eleven-month delay cannot be characterized as "prompt" under any recognizable understanding of the word. The fact that Plaintiff cannot point to a prior case that is a precise factual replica of his own does not save Defendants–the general right to a "prompt" post-deprivation hearing as laid out in the foregoing cases applies with "obvious clarity" here. *Lanier*, 520 U.S. at 272.

This case is distinguishable from *Davis v. Scherer*, 468 U.S. 183 (1984). There, the plaintiff had written notice one month prior to the deprivation of his employment that his continued part-time employment with the local sheriff's office could lead to the termination of his employment, and he chose to persist after having an opportunity to explain his position in writing. Because of the clear warning the plaintiff received, the opportunity he had to explain his side in writing, and his deliberate choice to continue his dual employment, the Court found that it was not "unreasonable...for the [Defendants] to conclude that appellee had been provided with the fundamentals of due process." *Id*. at 192. Here, it was unreasonable for Defendants to believe that Plaintiff had been provided with the fundamentals of due process when he had no written notice of the charges against him prior to his paycheck being cut off, and no meaningful opportunity to tell his side of the story prior to his termination. And, unlike in *Scherer*, Plaintiff did not settle with Defendants but depended on a prompt post-deprivation hearing, which he did not receive.

Finally, to the extent that Defendants argue they did not know Plaintiff had a constitutionally protected property interest in his paycheck, I regard that as unreasonable. It is clearly established that state civil service statutes that prohibit removal except "for cause" create protected property rights in continued employment. *Cleveland Bd. of Educ.*, 470 U.S. at 538-39; *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430 (1982) ("The hallmark of property, the Court has emphasized, is an individual entitlement grounded in state law, which cannot be removed except 'for cause.'"). The employment statute in question, 15 ILCS 310/9, plainly creates a "for cause" standard. Defendant Demuzio was the ISOS Director and Defendant Roth was the Director of Personnel. Such high-ranking officers with final decision-making authority over firings cannot shield themselves from liability by claiming ignorance of elemental legal protections to which their employees are

| STATEMENT |
|---|
| entitled. |
| |

1. In my December 14 order I found that Plaintiff's property deprivation lasted from November 16, 2007, the day he was put on leave without pay status, to April 30, 2008, the day he was formally terminated. That was incorrect. The deprivation lasted at least until October 6, 2008, the date he was finally given a hearing before the merit commission.